

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/06/2007

| | | |
|---|---|---|
| IN RE: | § | |
| JIM ROSS TIRES, INC.; dba HTC TIRE | § | CASE NO: 06-33147 |
| PRO; dba HTC TIRES & AUTOMOTIVE | § | |
| CENTERS | § | |
|    Debtor(s) | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION ON TRUSTEE'S OBJECTIONS TO AMPAC'S AND TRADITION BANK'S PROOFS OF CLAIM

For the reasons set forth below, the Court sustains the Trustee's objection to Am-Pac Tire Dist., Inc. and Tradition Bank's proofs of claim. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

*Background*

Jim Ross Tires, Inc. ("Debtor") filed a chapter 7 bankruptcy petition on July 10, 2006. The Trustee has objected to the proofs of claim filed by Am-Pac Tire Dist., Inc ("Am-Pac") and Tradition Bank.

On July 27, 2006, Am-Pac filed a proof of claim of $130,130.13 asserting a secured claim and lien on all of the Debtor's assets including accounts receivable, equipment and inventory. The proof of claim is supported by three financing statements, dated December 2, 2002, November 15, 2005, and December 27, 2005. The Trustee objects arguing that the Financing Statements do not meet the requirements necessary to perfect AmPac's interest in Debtor's assets. Accordingly, the Trustee seeks to recharacterize AmPac's claim as unsecured.

The Trustee argues that the 2005 Financing Statements are inadequate because the Financing Statements do not reference an interest in collateral sufficient to create a security interest. Both Financing Statements state that the collateral covered is a "promissory note." The Trustee asserts that the term "promissory note" is an insufficient description of the collateral.

1

AmPac does not dispute this argument. Accordingly, any dispute over the validity of the 2005 Financing Statements is moot. The 2005 Financing Statements are ineffective to perfect AmPac's interest.

The Trustee argues that the 2002 Financing Statement is inadequate because it does not properly list the Debtor's name as required by the Texas Business and Commerce Code.[1] The Trustee, therefore, asserts that the 2002 Financing Statement is also ineffective to support AmPac's secured interest.

On July 20, 2006, Tradition Bank filed an unsecured claim in the amount of $94,948.57 and a secured proof of claim in the amount of $63,033.56. To support its proof of claim, Tradition Bank provided two Financing Statements, dated July 30, 1998 and October 7, 2004. The Trustee asserted at the May 23, 2007 hearing that the 1998 Financing Statement had expired. Tradition Bank did not dispute this assertion. The Court, therefore, finds the 1998 Financing Statement is insufficient to support Tradition Bank's claim. As to the 2004 Financing Statement, the Trustee asserts that, like AmPac's 2002 Financing Statement, the Debtor's name is not properly stated as required by the Texas Business and Commerce Code.

*Analysis*

A security agreement is created to "define[] the collateral to enable the debtor and other interested persons to identify the property that the creditor may claim as a security." *Crow-Southland Joint Venture No. 1 v. North Fort Worth Bank*, 838 S.W.2d 720, 723-724 (Tex. App.-Dallas 1992, writ denied). The security interest attaches to a debtor's property when three requirements are met: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral; and (3) the debtor has authenticated a security agreement

---

[1] The Trustee also asserts that the 2002 Financing Statement is inadequate because the attached security agreement was not signed until March 8, 2005, and because the Debtor, as stated on the security agreement, is listed as HTC Tires & Automotive Centers—not Jim Ross Tires. Because the Court sustains the Trustee's objection as to the statement of Debtor's name, these arguments are moot.

2

that describes the collateral.[2] TEX. PROP. CODE. § 9.203(b). Once these requirements are met, the security interest becomes enforceable between the parties to the agreement. *Id.*

If a creditor wants to maintain priority over other creditors who may later claim an interest in the collateral, the creditor must perfect his security interest. Perfection provides notification to third parties that the debtor's property may be encumbered. *Id.* at § 9.301 et seq. For personal property which remains in possession of the debtor, such as Debtor's collateral in this proceeding, perfection occurs when the security interest attaches to the collateral and when a financing statement is filed.

It is a well-accepted principle that when an entity files for bankruptcy and a trustee is appointed, the trustee "stands in the shoes" of the debtor. *E.g., In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001). Security agreements entered into by debtors are, therefore, enforceable against the estate. The Bankruptcy Code, however, provides the trustee with certain other powers considered necessary "to implement the goal of every insolvency statute, which is the equal distribution of debtor's assets among its general non-priority creditors." 5 COLLIER ON BANKRUPTCY ¶ 544.01 (15th ed. 2006).

Among these other powers is ability of the trustee to avoid certain liens and transfers avoidable by creditors under state law. *E.g., Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647 (S.D. Tex. 2007). The first of these, as enumerated under the Bankruptcy Code, is found in § 544. This section is frequently referred to as the "strong-arm clause." *E.g. In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002). It is in this section that a trustee has the authority to avoid unperfected security interests. *E.g., W.C. Fore Trucking Co. v. Biloxi Prestreses Concrete, Inc. (In re Biloxi Prestress Concrete, Inc.)*, 98 F.3d 204, 207 (5th Cir. 1996). Section 544 states:

---

[2] The third requirement will vary depending on the type of collateral. Other requirements are inapplicable to this proceeding.

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

11.U.S.C. § 544(a)(1). Essentially, § 544(a)(1) provides that a trustee may avoid any interest voidable by a hypothetical judicial lien creditor.[3] *Id.* The trustee, therefore, steps not only into the debtor's shoes, but certain creditors' shoes as well. The trustee's powers as a judicial lien creditor are governed by state law. *E.g. In re Clifford* 566 F.2d 1023 (5th Cir. 1978).

Under Texas law, the Texas Business and Commerce Code provides that a security interest is subordinate to the rights of a person that becomes a lien creditor before the security interest is perfected. TEX. BUS. & COM. CODE § 9.317(a). A "lien creditor" is defined in the Texas Business and Commerce Code to include "a trustee in bankruptcy from the date of the filing of the petition." *Id.* at § 9.102(52)(C). Therefore, under Texas law, the moment Debtor filed for bankruptcy, the Trustee became a lien creditor whose rights trump those holding unperfected security interests. Accordingly, if AmPac and Tradition Bank are not properly perfected, the Bankruptcy Code and Texas Business and Commerce Code grant the Trustee, as a hypothetical lien creditor, rights superior to AmPac and Tradition Bank.

*Texas Business and Commerce Code § 9.503*

The Texas Business and Commerce Code provides a list of what information must be included on the financing statement for the statement to perfect the creditor's security interest. The first of these requirements is that the financing statement "provides the name of the debtor". TEX. BUS. & COMM. CODE § 9.502(a)(1). The proper statement of the debtor's name is governed

---

[3] The Bankruptcy Code defines "judicial lien" to mean a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

by § 9.503 which states that for a registered organization, the name on the financing statement must "provide[] the name of the debtor indicated on the public record of the debtor's jurisdiction of organization that shows the debtor to have been organized". TEX. BUS & COM. CODE § 9.503(a).[4] The Fifth Circuit has emphasized the necessity of compliance with this requirement, stating there should be "less tolerance of errors in a debtor's name" since the purposes of the filing system is to give notice to creditors that a security interest exists and "such errors may prevent a search from discovering the financing statement." *ITT Commercial Fin. Corp. v. Bank of the West*, 166 F.3d 295, 301 (5th Cir. 1999) (quoting *Nat'l Bank v. West Tex. Wholesale Supply Co. (In re McBee)*, 714 F.2d 1316, 1321 (5th Cir. 1983)).

Debtor's name on the 2002 Financing Statement filed by AmPac is stated as "JIM ROSS TIRES, INC. dba HTC TIRES & AUTOMOTIVE CENTERS". The name of Debtor as indicated by the Texas Secretary of State is "Jim Ross Tires Inc." As stipulated by the parties, Debtor's assumed name, "HTC Tires & Automotive Centers", expired on August 7, 2000, and was not renewed. AmPac argues that even though the statement of Debtor's name on the 2002 Financing Statement is not exactly as that "indicated on the public record of debtor's jurisdiction of organization," AmPac's inclusion of the dba at the end of the name is irrelevant to a determination of compliance with § 9.503(a). AmPac argues that § 9.503 sets only a "minimum limitation" for stating the debtor's name and if the correct name is otherwise included in the statement, any other information should be rendered "superfluous" and ignored for purposes of this analysis. Supplemental Brief at p.3.

---

[4] Effective June 15, 2007, § 9.503 has been amended to read: (a) A financing statement sufficiently provides the name of the debtor: (1) if the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the debtor's formation documents that are filed of public record in [of] the debtor's jurisdiction of organization to create the registered organization and that show [shows] the debtor to have been organized, including any amendments to those documents for the express purpose of amended the debtor's name. TEX. BUS. & COM. CODE § 9.503.

5

AmPac supports its argument by emphasizing subsections (b) and (c) of § 9.503. Section 9.503(b) provides that a "financing statement that provides the name of the debtor in accordance with Subsection (a) is not rendered ineffective by the absence of: (1) a trade name or other name of the debtor. . ." TEX. BUS. & COM. CODE § 9.503(b). Section 9.503(c) states that a "financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor." *Id.* at § 9.503(c). AmPac also references comment 2 to § 9.503 which states:

> Together with subsections (b) and (c), subsection (a) reflects the view prevailing under former Article 9 that the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient, whether or not the financing statement provides trade or other names of the debtor . . .

*Id.* at cmt. 2. Considering subsections (b) and (c) and the related comment together, AmPac asserts that the inclusion of dba's or other trade names was considered by the legislature, is entirely permissible, and should be of no consequence in this proceeding to an analysis of compliance with § 9.503(a).

The Court disagrees. While it is clear that the legislature considered certain effects of dba usage in satisfying § 9.503(a), the Court finds that the interpretation AmPac applies is overly broad and inoperable in application when considered with other sections of the Code. Specifically, AmPac's asserted interpretation, if applied, conflicts with the purposes of the indexing system when evaluated against the administrative procedures for indexing and searching UCC records filed with the Texas Secretary of State.

The Texas Administrative Code provides specific rules for the data entry of names in UCC filings. For organization names, the Code provides that:

> Organization names are entered into the UCC information management system exactly as set forth on the form, even if it appears that multiple names are set forth in the document or if it appears that the name of an individual has been included in the field designated for an organization name.

6

Tex. Admin. Code § 95.407(1). The requirement that the indexing officer enter the name exactly as provided is absolutely necessary based on the procedures for searching the Secretary of State's database. Search requests are performed by "set[ting] forth the full correct name of a debtor . . . consist[ing] of the name of the organization as stated on the articles of incorporation." *Id.* at § 95.501. The following rule applies to the actual search:

> Search results are created by applying standardized search logic to the name presented to the filing officer by the person requesting the search. Human judgment does not play a role in determining the results of the search. The following, and only the following rules are applied to conduct searches.
>
> (1) There is no limit to the number of matches that may be returned in response to the search criteria.
>
> (2) No distinction is made between upper and lower case letters.
>
> (3) Punctuation marks and accents are disregarded.
>
> (4) Words and abbreviations at the end of a name that indicate the existence or nature of an organization as set forth in the "Ending Noise Words" list as promulgated and adopted by the International Association of Corporation Administrators[5] as from time to time, are disregarded . . .
>
> (5) The word "the" at the beginning of the search criteria is disregarded.
>
> (6) All spaces are disregarded.
>
> (7) For first and middle names of individuals, initials are treated as the logical equivalent of all names that begin with such initials, and no middle name or initial is equated with all middle names and initials . . .
>
> (8) After taking the preceding rules into account to modify the name of the debtor requested to be searched and to modify the names of debtors contained in active

---

[5] Noise words include: Agency, Association, Assn, Associates, Assc, Assoc, Attorneys at Law, Bank, National Bank, Business Trust, Charter, Chartered, Company, Co, Corporation, Corp, Credit Union, CU, Federal Savings Bank, FSB, General Partnership, Gen part, GP, Incorporated, Inc, Limited, Ltd, Ltee, Limited Liability Company, LC, LLC, Limited Liability Partnership, LLP, Limited Partnership, LP, Medical Doctors Professional Association, MDPA, Medical Doctors Professional Corporation, MDPC, National Association, NA, Partners, Partnership, Professional Association, Prof Assn, PA, Professional Corporation, Prof Corp, PC, Professional Limited Liability Company, Professional Limited Liability Co, PLLC, Railroad, RR, Real Estate Investment Trust, REIT, Registered Limited Liability Partnership, RLLP, Savings Association, SA, Service Corporation, SC, Sole Proprietorship, SP, SPA, Trust, Trustee, As Trustee.

> financing statements in the UCC information management system, the search will reveal only names of debtors that are contained in active financing statements and, as modified, exactly match the name requested, as modified.

*Id.* at § 95.503. The applicant is to search by the "full correct name of a debtor." *Id.* at § 95.501. There is no rule modifying the search terms based on a dba. Nor is there any rule that the indexing officer consider and separate a stated dba from the debtor's name. *See Id.* at § 95.407(1). The Administrative Code clearly states that only exact matches and those modified by the rules are returned. *Id.* at § 95.503(8). Therefore, in this proceeding, if a subsequent creditor searches under debtor's correct name, Jim Ross Tires, Inc., because a dba is not a grounds for modifying the name of the debtor and only exact matches are returned, any financing statement filed with a dba will inevitably fail to appear.

The same analysis applies to Tradition Bank's claim. Debtor's name on the 2004 Financing Statement filed by Tradition Bank is stated as "JIM ROSS TIRE INC". Tradition Bank argues that there is "nothing in the standard search logic which would prohibit the official search engine from finding the 2004 UCC merely because an "s" is missing at the end of the name." Resp. at ¶ 7c. Tradition Bank, therefore, asserts the error lies with the Texas Secretary of State's application of § 95.503. The Court disagrees. There is no rule stated in § 95.503 that the letter "s" modifies the search for the debtor's name. As stated above, only exact matches are returned. Accordingly a search under Debtor's correct name will not return this Financing Statement.

As the comments to § 9.503(a) emphasize, the requirement of the debtor's name is "particularly important" because "[f]inancing statements are indexed under the name of the debtor, and those who wish to find financing statements search for them under the debtor's name." TEX. BUS. & COM. CODE § 9.503 cmt. 2. The Court will not construe § 9.503 in a manner which

essentially overrides the intent and purposes of the filing system.[6] In this proceeding, as to AmPac, the dba expired approximately seventeen months prior to the filing of the financing statement—it is not included in Debtor's correct name. Likewise, Tradition Bank failed to include the required "s" in Debtor's name. It is undisputed that Jim Ross Tires Inc. was the name of public record. Accordingly, neither AmPac nor Tradition Bank have met the requirements of § 9.503(a) necessary to perfect their Financing Statements.

*Texas Business and Commerce Code § 9.506*

The failure of Debtor's name to comply with § 9.503, however, is not necessary fatal to the perfection of AmPac's and Tradition Bank's security interests. Recognizing the possibility of errors in the statement of the debtor's name, the legislature enacted § 9.506(b) and (c) to address "the effectiveness of financing statement in which the debtor's name is incorrect." TEX. BUS. & COMM. CODE § 9.506 cmt. 2 (2006). Section 9.506 provides the following:

> (a) A financing statement substantially satisfying the requirements of this subchapter is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.
>
> (b) Except as otherwise provided in Subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9.503(a) is seriously misleading.
>
> (c) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9.503(a), the name provided does not make the financing statement seriously misleading.

---

[6] The Court also notes that practically under AmPac's interpretation, creditors could file financing statements with any extraneous words following the proper name and claim to be perfected. For example, a creditor could intend to file a financing statement for Smith, Inc. Based on the Administrative Code, the computer ignores the word "Inc." as a noise word, leaving the computer to process only the word "Smith". TEX. ADMIN. CODE § 95.503(4). Under AmPac's interpretation of § 9.503(a), a creditor could file a financing statement under the name of Smith Fashion Store or Smith Auto Repair and the creditor could expect to be perfected for an organization whose actual name was Smith, Inc.

9

TEX. BUS & COMM. CODE § 9.506.  The comments to § 9.506 describe subsection (b) and (c) as stating a "general rule" and an "exception".  *Id.* at cmt. 2.  Essentially, even if a debtor's name is misstated on the financing statement, as long as a search under the debtor's correct name would locate the financing statement, the misstatement should not be considered "seriously misleading" as a matter of law.  *Id.*  If not "seriously misleading", the financing statement is effective, despite the error, to allow for perfection of the creditor's security interest.  *Id.*  The policy of this section is considered "to simplify formal requisites and filing requirements."  *Id.*

AmPac and the Trustee have stipulated that a search under the name "Jim Ross Tires, Inc." does not reveal the existence of the 2002 Financing Statement.[7]  Similarly, the Trustee asserts, and Tradition Bank does not dispute, that under a standard search, Tradition Bank's Financing Statement does not appear.  The Business and Commerce Code is clear.  Absent the exception of § 9.506(c), if the debtor's name is not provided in accordance with § 9.503, the financing statement is "seriously misleading" and therefore ineffective.  TEX. BUS. & COM. CODE § 9.506(b).  AmPac and the Trustee's stipulation is conclusive that AmPac's Financing Statement does not fit within the exception.  Likewise, Tradition Bank has failed to show its statement is not "seriously misleading".  The Court, therefore, finds pursuant to § 9.506, the statement of Debtor's name on both AmPac's and Tradition Bank's financing statements is "seriously misleading" as a matter of law.

*Texas Business and Commerce Code § 95.408*

AmPac also argues that any failure to locate the 2002 Financing Statement is a result of indexing errors in the Secretary of State's filing system.  To support this argument, AmPac references the Texas Administrative Code § 95.408.  Without need of detailed analysis, the Court

---

[7] To locate the December 2002 Financing Statement, a search must be conducted using the name, "Jim Ross Tires, Inc. dba HTC Tires & Automotive Centers" or "Jim Ross Tires, Inc. dba HTC Tires and Automotive Centers".

rejects this argument. Section 95.408 is inapplicable to the present proceeding. Section 95.408 applies to a "UCC document that is an initial financing statement or an amendment that adds a debtor to a financing statement and that fails to specify whether the debtor is an individual or an organization . . . [that] is accepted for filing in error." TEX. ADMIN. CODE § 95.408. Such rules are irrelevant to this proceeding.

*Non-Standard Search Logic*

Tradition Bank additionally argues that it should be perfected because its 2004 Financing Statement can be located by using a non-standard "wildcard" search. Since the 2004 Financing Statement can be found with non-standard search logic, Tradition Bank asserts that the Trustee, as one government agency, is ignoring that it is possible to find this Financing Statement and is relying on another government agency to deprive Tradition Bank of its property interest without due process.

The Court finds this argument without merit. The Texas legislature has codified the requirements for determining the effectiveness of financing statements. Tradition Bank did not comply with § 9.503 in properly stating Debtor's name. If the debtor's name does not exactly comply with that as required under § 9.503, the legislature provided relief under § 9.506. Section 9.506, however, specifically defines the requirement for relief. The statute is not ambiguous. It states that if a search using the "standard search logic" fails to disclose the financing statement, the statement is "seriously misleading" and ineffective. TEX. BUS. & COM. CODE § 9.506(c). The Court will not expand this relief to include a Court created non-standard search logic exception to the general rule.[8]

---

[8] Indeed, the comments to § 9.506 state that it is "designed to discourage the fanatical and impossibly refined reading of statutory requirements in which courts occasionally have indulged themselves." TEX. BUS. & COM. CODE § 9.506, cmt. 2.

11

*Conclusion*

Based on the foregoing, all other arguments are moot. AmPac and Tradition Bank failed to state Debtor's correct name on the Financing Statements as required by § 9.503(a). The parties do not fit within the exception of § 9.506. Accordingly, the Court finds that the Financing Statements are ineffective to grant security interests in Debtor's collateral. Although this result is harsh, the Court must examine the result in the context of claims between competing creditors. The moment Debtor filed bankruptcy, the Trustee had the authority of a hypothetical judicial lien creditors whose priority, by statute, is superior to that of unperfected creditors. TEX. BUS. & COM. CODE § 9.317(a). In that context, the Court must either (i) find for the creditor who did comply with the filing requirements and gave value (i.e., the hypothetical lien creditor); or (ii) find for the creditor who did NOT comply with the filing requirements and gave value. In consideration of the Trustee as a hypothetical judicial lien creditor, the result is apparent.[9] The Trustee's objections are sustained. A separate order will issue.

Signed at Houston, Texas, on August 6, 2007.

MARVIN ISGUR
United States Bankruptcy Judge

---

[9] In 1999 the Fifth Circuit addressed a similar challenge under the old UCC. The Court found that a bank's error in stating a debtor's name—stating "Compucentro, USA, Inc." rather than "Compu-Centro, USA, Inc."—rendered its financing statement ineffective. *ITT Commercial Finance Corp.*, 166 F.3d at 304. In so holding, the Court remarked:

> Although this outcome may appear harsh, it comports with the policies underlying the UCC. "[P]lacing on the filing creditor the burden of ascertaining and filing under a debtor's legal name is necessary to effectuate the UCC's policy of certainty and simplicity in these commercial transactions."

*Id.* at 304 (citing *Transamerica Commercial Fin. Corp. v. Gen. Elec. Capital Corp. (In re Waldrop, Inc.)*, 133 B.R. 210, 216-17 (Bankr. S.D. Ind. 1990)). The Court's holding today is made in view of the same policy considerations as those evaluated by the Fifth Circuit under the prior UCC.